**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| MICHAEL KENT, | ) |
| Plaintiff, | ) ) ) Case No. _____ |
| v. | ) ) |
| PRA HEALTH SCIENCES, INC., COLIN SHANNON, JEFFREY T. BARBER, ALEXANDER G. DICKINSON, LINDA S. GRAIS, JAMES C. MOMTAZEE, GLENN D. STETTIN, and MATTHEW P. YOUNG, | ) ) ) ) ) ) ) **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** **JURY TRIAL DEMANDED** |
| Defendants. | ) ) ) |

Plaintiff Michael Kent ("Plaintiff"), on behalf of himself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

**NATURE OF THE ACTION**

1. This is an action brought by Plaintiff against PRA Health Sciences, Inc. ("PRA Health" or the "Company") and the members of PRA Health's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9,. By the Action, Plaintiff seeks to enjoin the vote on a proposed transaction, pursuant to which PRA Health will be acquired by ICON plc ("ICON") through ICON's subsidiaries ICON US Holdings Inc. ("US Holdco") and

Indigo Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").[1]

2. On February 24, 2021, ICON issued a press release announcing that it had entered into an Agreement and Plan of Merger dated February 24, 2021 (the "Merger Agreement") to acquire PRA Health. Under the terms of the Merger Agreement, each holder of PRA Health common stock will receive both of: (i) $80 in cash and (ii) 0.4125 shares of ICON common stock for each share of PRA Health common stock they own (the "Merger Consideration").[2]

3. On April 28, 2021, the Company filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that PRA Health stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) certain financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by the Company's financial advisors, BofA Securities, Inc. ("BofA Securities") and UBS Securities LLC ("UBS" and together with BofA Securities, the "Financial Advisors"); and (iii) the Background of the Proposed Transaction. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. It is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin

---

[1] Non-party ICON is a public limited company incorporated in Ireland and operating under the Irish Companies Act 2014, with its principal executive offices located at South County Business Park, Leopardstown, Dublin 18, Ireland. Non-party US Holdco is a Delaware corporation and a wholly owned subsidiary of ICON. Non-party Merger Sub is a Delaware corporation and a wholly owned subsidiary of ICON and US HoldCo.

[2] The Proposed Transaction is valued at approximately $12 billion.

Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

7. The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of PRA Health.

10. Defendant PRA Health is a Delaware corporation, with its principal executive offices located at 4130 ParkLake Avenue, Suite 400, Raleigh, NC 27612. The Company is one of the world's leading global contract research organizations ("CRO"). PRA Health's common stock trades on The Nasdaq Global Select Market under the ticker symbol "PRAH."

11. Defendant Colin Shannon ("Shannon") is Chairman of the Board, and has been President, Chief Executive Officer ("CEO"), and a director of the Company since January 1, 2010.

12. Defendant Jeffrey T. Barber ("Barber") has been director of the Company since November 2014.

13. Defendant Alexander G. Dickinson ("Dickinson") has been a director of the Company since August 2017.

14. Defendant Linda S. Grais ("Grais") has been a director of the Company since October 2015.

15. Defendant James C. Momtazee ("Momtazee") has been a director of the Company since September 2013.

16. Defendant Glen D. Stettin ("Stettin") has been a director of the Company since September 2020.

17. Defendant Matthew P. Young ("Young") has been a director of the Company since February 2015.

18. Defendants identified in paragraphs 11-17 are referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

19. On February 24, 2021, ICON announced in relevant part:

DUBLIN--(BUSINESS WIRE)--ICON plc, (NASDAQ: ICLR), a global provider of outsourced drug and device development and commercialisation services to the pharmaceutical, biotechnology and medical device industries, and government and public health organisations, today announced it has entered into a definitive agreement to acquire PRA Health Sciences, Inc. (NASDAQ: PRAH) in a cash and stock transaction valued at approximately $12 billion, with the per share merger consideration consisting of $80 in cash and 0.4125 shares of ICON stock. The consideration represents an approximately 30% premium to PRA's closing price as of February 23rd, 2021.

The transaction brings together two high-quality, innovative and growing organisations with similar cultures and a shared focus on high quality and efficient

4

clinical trial execution from Phase 1 to post-approval studies.

Biopharma and medical device customers of all sizes will benefit from broader service offerings and geographic footprint, deeper therapeutic expertise, expansive healthcare technology innovation, and functional talent and capabilities. PRA's mobile and connected health platforms and real world data and information solutions together with ICON's Accellacare site network, home health services and wearables expertise, will be combined to deliver differentiated decentralised and hybrid trial solutions to meet growing customer needs.

The transaction is anticipated to be highly accretive delivering double-digit accretion in the first full year and growing to 20%+ thereafter, driven by growth momentum, estimated annual run-rate cost synergies of $150 million, and the combined effective tax rate decreasing to 14%, both to be realised in approximately 4 years.

Dr. Steve Cutler, Chief Executive Officer, ICON plc, said:

"The combined company will create a new paradigm for accelerating clinical research and bringing new medicines and devices to market. Both ICON and PRA have track records of robust growth and performance and we are ready to build on this unrivalled position of strength, utilising the outstanding talent in both organisations.  With broader and deeper operational scale combined with innovative technology and real world data solutions, we will enable all customers to reduce their development time and cost. We will be the leading provider of de-centralised and hybrid trial solutions through the integration of our data capabilities, health platforms and Accellacare site network. The transaction will be highly accretive from full year 1 post-close."

Colin Shannon, Chairman and Chief Executive Officer, PRA Health Sciences, said:

"I joined PRA 13 years ago to help build a company that would make a difference in the world and transform the way we developed new medicines. The way we do it now takes far too long and costs far too much. Critically ill patients can't wait for cures. Underserved populations can't wait for access. Every day counts. COVID-19 created a platform for change that we cannot ignore. The pandemic accelerated the adoption of mobile health technologies and healthcare intelligence tools – tools that PRA helped develop – at an unprecedented rate. The union of PRA and ICON will create an organization that has the people, data and technology to bring those cures to patients faster and more efficiently than ever before. We are thrilled to be joining with ICON, a company with a similar culture and values. I'm deeply indebted to PRA's 19,000 talented employees who have helped us bring this vision closer to reality. We stand together now because patients can't wait."

**TRANSACTION DETAILS**

Under the terms of the transaction, PRA shareholders will receive per share, $80 in cash and 0.4125 shares of ICON stock. Upon completion of the transaction, PRA

shareholders will own approximately 34 percent of the shares of the combined company and ICON shareholders will own approximately 66 percent.

**MANAGEMENT, GOVERNANCE AND HEADQUARTERS**

The combined company will be headquartered in Dublin, Ireland. Dr. Steve Cutler, Chief Executive Officer of ICON plc, will serve as Chief Executive Officer of the combined company and Brendan Brennan, Chief Financial Officer of ICON plc, will serve as Chief Financial Officer.  Ciaran Murray will serve as the Chairman of the Board of Directors.

Current PRA Chairman and Chief Executive Officer, Colin Shannon will join the board post the closing of the transaction along with one additional board member from PRA.

**FINANCING, CLOSING AND APPROVALS**

ICON intends to fund the cash portion of the transaction consideration through a combination of cash on hand and fully committed debt financing from Citi.  The transaction is not subject to a financing condition.

The transaction has been unanimously approved by both Boards of Directors and is anticipated to close during quarter three of 2021, subject to regulatory and shareholder approvals and customary closing conditions.  Until closing, PRA and ICON remain separate and independent companies.

**ADVISORS**

Centerview Partners is acting as lead financial advisor with Citi providing additional financial advisory services, and Cahill Gordon & Reindel serving as legal counsel to ICON plc.  BofA and UBS Investment Bank are acting as financial advisors, and Paul Weiss serving as legal counsel to PRA Health Sciences.

***The Proxy Statement Contains Material Misstatements or Omissions***

20. The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to PRA Health's stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

21. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) certain financial projections; (ii) the data and inputs underlying the financial

valuation analyses that support the fairness opinion provided by the Financial Advisors; and (iii) the Background of the Proposed Transaction.

***Material Omissions Concerning Certain Financial Projections***

22. The Proxy Statement omits material information regarding the Company's financial projections, including the line items used to derive the Unlevered Free Cash Flow projections included in the Proxy Statement. *See* Proxy Statement at 110 – 111.

23. In addition, with respect to the "ICON-Adjusted PRA Forecasts," the Proxy Statement fails to disclose (i) the basis for including a set of projections that includes "adjustments" to PRA Management's Projections, including (ii) who at PRA management "discussed" these "adjustments" with ICON, (iii) the timing and substance of such discussions, (iv) why PRA management authorized ICON to make "adjustments" to its own projections, and (v) whether the original PRA projections in fact continue to represent management's best guess for the Company's future financial results notwithstanding the "adjustments."

24. The omission of this material information renders the statements in the "Financial Projections" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Financial Advisors' Financial Analyses***

25. The Proxy Statement omits material information regarding the Financial Advisors' financial analyses.

26. With respect to BofA Securities' *Selected Publicly Traded Companies Analysis,* the *P*roxy Statement fails to disclose: (i) the individual multiples for each of the selected companies, (ii) the Company's net debt; and (iii) the Company's number of fully diluted-shares of common stock outstanding.

27. With respect to BofA Securities' *Selected Transactions Analysis*, the Proxy fails to disclose: (i) the individual multiples and metrics for the transactions observed in the analysis; (ii) the Company's net debt; and (iii) the Company's number of fully diluted shares of common stock outstanding.

28. With respect to BofA Securities' *Discounted Cash Flow Analysis* ("DCF"), the Proxy fails to disclose: (i) the basis for utilizing discount rates ranging from of 7.5% to 10.0% for PRA and 7.25% to 9.5% for ICON, including the actual inputs that were used for each of PRA and ICON, (ii) the basis for using terminal multiples ranging from 13.0x to 16.5x for PRA and 13.0x to 17.5x for ICON, and (iii) the terminal values.

29. With respect to BofA's *Wall Street Analysts Price Targets Analysis*, the Proxy Statement fails to disclose: (i) the price targets observed in the analysis; and (ii) the sources thereof.

30. With respect to BofA's Has/Gets Analysis, the Registration Statement fails to disclose: (i) the individual inputs and assumptions underlying the discount rate range of 7.5% to 10.0% and the perpetuity growth rates; (ii) the debt used in the analysis; and (iii) the estimated number of fully diluted ordinary shares expected to be outstanding.[3]

31. With respect to UBS' *Discounted Cash Flow Analysis,* the Proxy fails to disclose: (i) the basis for utilizing discount rates ranging from of 9.0% to 10.0% for PRA and ICON, including the actual inputs that were used for each of PRA and ICON, (ii) the basis for using terminal multiples ranging from 15.0x to 16.0x for PRA and ICON, and (iii) the terminal values.[4]

---

[3] Notably, the Proxy Statement also fails to disclose: (i) whether BofA Securities has actually provided financial services to ICON; (ii) the nature of any such services; and (iii) the amount of compensation that BofA Securities has received from ICON in connection therewith.

[4] The Proxy Statement also fails to disclose: (i) whether UBS Securities has provided financial services to PRA and/or ICON during the two-year period leading up to the transaction; (ii) the

32. Without such undisclosed information, PRA Health stockholders cannot evaluate for themselves whether the financial analyses upon which stockholders are asked to rely were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which the fairness opinions and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction or seek appraisal.

33. The omission of this material information renders the statements in the "Opinion of PRA's Financial Advisors" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning the Background of the Proposed Transaction*

34. The Proxy Statement fails to disclose material information concerning the background of the Proposed Transaction. For instance, notwithstanding that PRA entered into a letter of intent with Company A, the Proxy Statement fails to disclose the "key commercial and other material terms" and the "fundamental differences" between PRA and Company A.

35. Perhaps even more critically, the Proxy Statement reflects the Company A undertook due diligence on PRA. Despite this, the Proxy Statement fails to disclose whether PRA entered into a confidentiality agreement with Part A that included a "don't-ask, don't-waive" ("DADW") standstill provisions that is still in effect and presently precluding any potential counterparty from submitting a topping bid for the Company.

---

nature of any such services; and (iii) the amount of compensation that BofA Securities has received in connection therewith.

36. The failure to disclose the existence of DADW provisions creates the false impression that any of the potential bidders who entered into confidentiality agreements could make a superior proposal for the Company. If those confidentiality agreements contain DADW provisions, then those potential bidders can only make a superior proposal by (i) breaching the confidentiality agreement—as in order to make the superior proposal, they would need to ask for a waiver, either directly or indirectly; or by (ii) being released from the agreement, which if action has been done, is omitted from the Proxy Statement.

37. Any reasonable Company stockholder would deem the fact that the most likely topping bidders for the Company may be precluded from making a topping bid for the Company to significantly alter the total mix of information.

38. The omission of this information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

39. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of PRA Health will be unable to make an informed voting or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

40. Plaintiff repeats all previous allegations as if set forth in full.

41. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

42. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the Company's financial projections, the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Morgan Stanley, and Morgan Stanley's and Company insiders' potential conflicts of interest. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

43. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or seek to exercise their appraisal rights.

44. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

45. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive

relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act

46. Plaintiff repeats all previous allegations as if set forth in full.

47. The Individual Defendants acted as controlling persons of PRA Health within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of PRA Health, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

48. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

50. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed

Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

51.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, PRA Health's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of PRA Health, and against defendants, as follows:

A.     Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to PRA Health stockholders;

C.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

D.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act,

as well as SEC Rule 14a-9 promulgated thereunder;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: May 26, 2021 **LONG LAW, LLC**

By */s/ Brian D. Long*
Brian D. Long (#4347)
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@longlawde.com

*Attorneys for Plaintiff*